Daniel Berko (SBN: 94912)
**LAW OFFICE OF DANIEL BERKO**
819 Eddy St
San Francisco, CA, 94109
Tel: (415) 771-6174
Fax: (415) 474-3748
Email:  daniel@berkolaw.com

Attorney for Defendants,
Bruce Owen and Alexandra Owen

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES DEPARTMENT OF STATE | Case No.: 4:19-cv-04094-HSG |
| Plaintiffs, | **DEFENDANT BRUCE OWEN AND ALEXANDRA OWEN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| BRUCE OWEN and ALEXANDRA OWEN | |
| Defendants. | **(COMBINED REPLY AND OPPOSITION)** |
| | **DATE: October 15, 2020**<br>**Time: 2:00 p.m.**<br>**Courtroom 2-4th Floor** |

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................... - 1 -

II.    THE REQUIRED MANDATORY DECLARATIONS UPON WHICH THIS ACTION IS BASED ARE DEFECTIVE AT BEST AND CANNOT SUPPORT THIS ACTION.................. - 2 -

III.    THE UNITED STATES FILED MEMORANDUM OF NOTICE OF INTENT WITH THE RENT BOARD IS KNOWINGLY FALSE AND AT A BARE MINIMUM FLATLY WRONG - 5 -

IV.    THE UNITED STATES' CLAIM THAT ONLY THE RENT ORDINANCE IN EFFECT IN 1987 IS APPLICABLE IS FRIVOLOUS ..................................................................... - 9 -

V.    THE LANGUAGE IN THE ADDENDUM IN NOT SUSCEPTIBLE TO THE INTERPRETATION OF THE UNTIED STATES WHEN ONE CONSIDERS ONLY ADMISSIBLE EVIDENCE.................................................................................... - 13 -

VI.    THERE IS AMPLE EVIDENCE OF RETALIATION AND BAD FAITH MOTIVE .... - 16 -

VII.    SOVEREIGN IMMUNITY HAS NO APPLICATION ..................................... - 17 -

VIII.    THE COURT SHOULD AWARD SANCTIONS UNDER 28 USC 1927 AND/OR FRCP RULE 56(h) .................................................................................................... - 17 -

IX.    CONCLUSION............................................................................................. - 18 -

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Cases

*American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988) .............................. - 9 -
*Bareal v. Superior Court* (1981) 30 Cal.3d 244 .......................................................................... - 16 -
*Drouet v. Superior Court* (2004)31 Cal.4th 583............................................................................ - 16 -
*Gomez v. Smith* (September 22, 2020) (Certified for Publication) Court of Appeal, Third Appellate
    District, Case C089338 .......................................................................................................... - 7 -
*Guity v. Martinez* 2004 WL 1145832 .......................................................................................... - 13 -
*Lexington Ins. Co. v. Commonwealth Ins. Co.* (N.D. Cal., Sept. 17, 1999, No. C98-3477CRB(JCS))
    1999 WL 33292943 .............................................................................................................. - 15 -
*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233 ............................................................ - 16 -
*Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848 (9th Cir.1995)................................................................... - 9 -
*Trident Center v. Connecticut General Life Ins. Co.* 847 F.2d 564.............................................. - 15 -
*United States v. Epstein,* 27 F. Supp.2d 404 ................................................................................ - 13 -
*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.* (D. Ariz. 1997) 995 F.Supp. 1060................. - 9 -

Statutes and Ordinances

22 USCA 4301-4316........................................................................................................................ - 7 -
California Civil Code Sections 1946 .............................................................................................. - 11 -
Civil Code sec. 1942.5.................................................................................................................... - 16 -
San Francisco Rent Ordinance sec 37.9....................................................................... - 3 -, - 9 -, - 10 -

Other Authorities

Geneva Convention of 1963, Article 27 (United Nations, *Treaty Series,* vol. 596 p. 261)............ - 7 -

1

## I.   **INTRODUCTION**

2

3

   The UNITED STATES has abandoned any pretense that this eviction complies with the San

4

Francisco Residential Rent Stabilization and Arbitration Ordinance (Chapter 37 of the San

5

Francisco Administrative Code, hereafter "SFRO") in existence during any relevant time period

6

(June 19, 2018 to present.) In an unpled theory, which was also never disclosed in discovery

7

responses that certainly should have disclosed it if it was to be relied upon,  it now claims that only

8

the SFRO and Ellis Act in effect in 1987, when the second lease was signed, applies and it complied

9

with the SFRO and Ellis Act as they existed in 1987. It submits the knowingly false declaration of

10

Matthew Sandelands in support of the new theory in which he says that UNITED STATES was

11

simply complying with current law throughout this case in "an abundance of caution." (See

12

Sandelands  decl. at Doc 62-2, p. 2:16-22 par. 9.)[1]   There is not a single writing or communication

13

ever, prior to the filing of its joint opposition and motion on September 10, 2020, where the

14

UNITED STATES communicates this claim that only the SFRO frozen in 1987 applies. Nor is

15

there a single communication prior to September 10, 2020 where it communicates that it was acting

16

in an abundance of caution in complying with current law, or that the 1987 law applied where

17

inconsistent with current law.

18

   The UNITED STATES also claims that it had the right to utilize the Ellis Act because it acts

19

as an agent of the owner- the government of Iran.  That too is false and below we quote the

20

UNITED STATES' brief in a case, that as relevant,  involves the exact same legal issue (the

21

UNITED STATES' relationship to the properties and to Iran in relation to the properties) where it

22

unambiguously pointed out it "has never acted as an agent for Iran in respect to the real properties"

23

(the properties involved are referenced in the Complaint, (Doc 1, at p. 3:18-23, at par. 17.) Because

24

its "agency" theory is at best wrong, and really a knowing attempt to mislead the court to obfuscate

25

the total lack of merit to this action, this action fails under any version of the SFRO and/or the Ellis

26

_____

27

[1] He also declares, "the only version of the rent ordinance that applied" was the 1986 version. Obviously, there is no foundation for this legal conclusion, and it is flatly inadmissible. Defendants cite what he says in their papers,, not for

28

the truth of any statement, but simply to respond to the false statements upon which plaintiff's case is based. See also Defendants' Evidentiary Objections concurrently filed, objecting to his declaration.

Act. The UNITED STATES no longer claims to be an "owner" of the property nor could it. Sandelands own testimony refutes that claim as he is clear Iran owns the property.

The UNITED STATES never addresses defendants' assertions that Sandelands intentionally falsely claimed to be an owner of the property in the recorded "Memorandum of Notice Regarding Withdrawal of Rental Units from Rent or Lease" (hereafter "Recorded Memorandum of Notice"), a declaration specifically required by law as a mandatory precondition to proceeding in this action Nor does it address the fact that he signed the Recorded Memorandum of Notice as an individual, claiming he personally owns the property, which even more renders the document defective as a matter of law.(As will be seen and was discussed in the opening memorandum, the "Notice of Intent to Withdraw Residential Units from the Rental Market" (hereafter "Rent Board Notice of Intent") is the other one of the two mandatory sworn declarations that are preconditions to proceeding in this action. It too is knowingly false or at best clearly wrong and either way that suffices to invalidate it as the required filing.

The UNITED STATES also claims retaliation is not a defense in this case which is arguable unlike its other claims, but is not correct under the facts of this case.

## II.   THE REQUIRED MANDATORY DECLARATIONS UPON WHICH THIS ACTION IS BASED ARE DEFECTIVE AT BEST AND CANNOT SUPPORT THIS ACTION

Perjury.  Is there a better word for it?

It is not disputed, nor could it be, that the   "Memorandum of Notice Regarding Withdrawal of Rental Units from Rent or Lease"  (underlining in original, attached to Complaint at Doc 1, p 23-24 (Exh E to complaint.) [2] is a mandatory prerequisite precondition to filing this action.  (See SFRO at 37.9A(f)(2.) In it, it is also undisputed that Mr. Sandelands, who knew he was not an owner of the property still swore that he was signing and acting as the "owner" of the property.  He also knew that under no possible view of the facts was he the "owner."  These facts, establish, beyond any

---

[2] For the court's convenience it was also filed with defendants' motion at  Exhibit F to Berko decl. Document 55-10, p. 7-8; ) Plaintiff also provided it to the court (attached to the Sandelands' declaration and its Request for Judicial Notice.

doubt that (1) under penalty of perjury (2) Sandelands swore he signed "as the owner" [3] (3) he knew that was false and he was not an owner (4) and the lie was material because it was made on a specifically required filing by law as a precondition to the right to file this action. (See San Francisco Rent Ordinance sec 37.9A(f)(2)) :

<u>"Memorandum of Notice</u>
<u>Regarding Withdrawal of Rental Units from Rent or Lease"</u>
(to be recorded by owner)

"This memorandum evidences that the undersigned, **as the owner of the property**… has filed a notice with the San Francisco Residential Rent Stabilization and Arbitration Board, which contents are certified under penalty of perjury…"  (Exhibit "G" to Complaint Doc 1, at p. 32-34.)

The quoted language is required by 37.9(A(f)(2) and is verbatim what Sandelands swore was true. He does not sign "as agent for the owner" (which would also be a knowing lie, but is irrelevant to examination of this sworn document.)

Perjury under both California law and United States law (and probably all 50 states) requires a statement knowingly under penalty of perjury, that is false, that the witness knows is false and that is material to the proceeding. Sandelands even knew that the Ellis Act only allowed "owners" to utilize its provisions.

Your author has read with great care the UNITED STATES' memorandum in opposition to defendants' motion and in support of its motion. In fact, to be sure he was not missing anything, your author has read the UNITED STATES memorandum, even the boilerplate- in other words every word- at least three times. He can state that the UNITED STATES never explains why this false declaration is true or proper. The closest it comes to addressing the Recorded Notice of Memorandum actually signed by Sandelands, is at "Plaintiff's Combined Motion for Summary Judgment etc."  (hereafter "Pl. Memo.") Doc 62, p. 18-21 where it says several false things such as there is "no genuine dispute" that the UNITED STATES is authorized by various laws "to act for

---

[3] If one signs "as the owner of the property" as Sandelands did, that has the exact same meaning as swearing "I am the owner."

1   the Government of Iran with respect to the property.[4]" (Pl. Memo, at p. 18:9-11)  The UNITED

2   STATES full well knows, as does Sandelands, that the UNITED STATES never "act[s] for the

3   Government of Iran" a declared terrorist state,  (see https://www.state.gov/state-sponsors-of-

4   terrorism)   but rather complies with its treaty obligations in protecting and preserving the property,

5   but not "for the Government of Iran."   We will discuss later some of the other clearly false and

6   even irrelevant statements the UNITED STATES makes in that section of its memorandum.

7          But, the only portion of  the UNITED STATES' entire memorandum which remotely

8   touches on the Recorded Memorandum of Notice Sandelands signed (we are being way too

9   generous in assuming even this addresses the false statements made in the Recorded Memorandum

10  of Notice) is where the UNITED STATES says "Defendants misstate Mr. Sandeland's testimony"

11  and misunderstand the role of the United States as custodian." (*Id.* at 19:24-25)  In essence, the

12  UNITED STATES  repeats its argument that it acts for the government of Iran and as its agent, and

13  says (falsely as well) that Mr. Sandelands' deposition testimony is consistent with this position. For

14  sure, it is not, and we correctly characterize it in this memorandum and the opening memorandum

15  as entirely consistent with the view expressed by defendants)  but his alleged understanding that the

16  UNITED STATES acts as "agent for Iran" would in no way justify the false statements in the

17  Recorded Memorandum of Notice. But we finally get to the only time, ever, the UNITED STATES

18  actually addresses the knowingly false Recorded Memorandum of Notice  and it states "Defendants

19  are mistaken for the reasons set forth above; Plaintiff possesses broad and sole authority as

20  custodian of the property to act for the Government of Iran." (*id.* Doc 62, p.20:28-21:2.)  Even if

21  one assumes, arguendo, that the UNITED STATES is "an agent of Iran" and is "acting for Iran"

22  obviously the Recorded Memorandum of Notice is still 100% false.  The UNITED STATES,

23  showing disrespect for the court, quotes in its memorandum from the SFRO 1986 form, but of

24  course, Mr. Sandelands used the current form, swore that the UNITED STATES was acting

25  properly under current law, and swore to the truth of the current form. (Compare Pl. Memo at p.

26  12:15-21 (quoting from an earlier version of the SFRO that allowed an agent to sign for the owner)

27  ————————————————

28  [4] This knowingly false statement (that the UNITED STATES "acts for Iran" or as Iran's agent,  is repeated several times
    by the UNITED STATES no doubt under the theory that if  it only repeats it enough times it will become true.

with what Sandelands actually swore was true- the actual Recorded Notice of Memorandum at Sandelands' decl. exh. C, Doc 62-2, at 15-17.)  In fact, the UNITED STATES proves that it is essential only the actual owner sign because it shows the law was amended to delete the allowance for an agent to sign as of the relevant period.  The actual declaration is clearly, unambiguously, explicitly false.  The UNITED STATES does not claim otherwise, and totally ignores what he swore to in the Recorded Memorandum of Notice despite the extensive discussion of this in the opening memorandum.

If a bank robber was a plaintiff in this case suing for her half of the robbery's proceeds, the court would throw her out of the courtroom.  So too, under no circumstances can a knowingly false declaration support a claim of compliance with the SFRO.

Lastly, the SFRO clearly requires the "owner" to file the Recorded Memorandum of Notice. (SFRO at 37.9A(f)(2)   Mr. Sandelands has no status or rights whatever related to the property. His signing as an individual, with no mention of any representative capacity or on behalf of anyone or anything else, means there is nothing remotely approaching compliance with the SFRO and it is clear, explicit, and unambiguous on what is needed to constitute compliance or material compliance.  Mr. Sandelands signing the Recorded Memorandum of Notice does not come within a country mile of compliance.  (The Recorded Memorandum of Notice is entirely distinct from the Notice of Intent, required to be filed with the Rent Board.  The Rent Board Notice of Intent is due as of the date the process is started, in this case June 19, 2018. ( SFRO 37.9A(f)(1.) The Recorded Memorandum of Notice is filed not with the Rent Board but with the County Recorder and is not due until the notice period in the eviction notice (at least 120 days) expires. (SFRO 37.9A(f)(2) and (4.))   In fact, what he filed with the Recorder is a total nullity in that it is not a restraint on the property intended by the law since he is not on title and has no status. It is literally not worth the paper it is printed on.

## III.   THE UNITED STATES FILED MEMORANDUM OF NOTICE OF INTENT WITH THE RENT BOARD IS KNOWINGLY FALSE AND AT A BARE MINIMUM FLATLY WRONG

The Rent Board Notice of Intent (Compl. Exh. E, Doc 1 at p. 23-24 also Sandeland's dec. at

Exh.B, doc. 62-2, p,12-13)  was and is also knowingly false  because the false representations of the

UNITED STATES memorandum to the contrary, Mr. Sandelands  is absolutely clear, as anyone

with knowledge of the law would be, that the UNITED STATES is not acting "for" Iran.  It is not

Iran's agent. The Rent Board Notice of Intent filed by Mr. Sandelands states:

> "**OWNER INFORMATION** (All owners of the property must be listed)"
> "Name: United States Department of State, Office of Foreign Missions, as Custodian for the Government of Iran." (*id*  at p. 23.)

There is no way to interpret the above sworn statement as meaning anything other than the

United States is the owner of the property in its representative capacity as Custodian.

Further down, the document states

> "IV. <u>OWNER'S DECLARATION</u>"

> "**<u>ALL OWNERS MUST SIGN</u>**"

> "Attorneys and/or non-attorney representatives may not sign the owner's declaration on behalf of the owner."  (Compl. at p. 24; Sandelands dec. at doc 62-2, p. 13.)

Plainly, the owner must sign and no agent may sign. (Even if an agent could sign, not true here,

there is nothing in the record that shows Sandelands had authority to sign on behalf of the UNITED

STATES, any such authority would have had to be in writing and no writing has been produced

authorizing Sandelands to act for the UNITED STATES. The ACTION MEMO approves the

decision, it does not give Sandelands any authority to sign documents for the UNITED STATES.

(See Sandelands' dec. doc 62-2, Exh H at 70-72.)

Mr. Sandelands knows that it is a totally false statement that the "United States Department

of  State…as Custodian for the Government of Iran" is the owner of the property. His deposition

testimony makes absolutely clear that he fully knows that the "owner" of the property is, without

any doubt or equivocation, the government of Iran.

The UNITED STATES argues in its memorandum that it can make false statements and

commit perjury because after all it is the "agent" for Iran and owners can act through their agents.

However, obviously, the issue here is does the specific law at issue require that the owner act

personally and not through an agent; not whether as a general proposition an owner can act through an agent.

But the UNITED STATES is knowingly trying to mislead the court.  It would be a gross insult to the many United States victims of Iranian terrorism (judgments exceed $50 Billion- see https://www.fdd.org/analysis/2016/05/06/iran-still-owes-53-billion-in-unpaid-u-s-court-judgments-to-american-victims-of-iranian-terrorism [5]) and a repudiation of UNITED STATES policy by every single president since Jimmy Carter, to describe the UNITED STATES as having a duty of loyalty to Iran, one of only four countries specifically designated as a terrorist state and generally considered by far the worst of the four when it comes to the interests of  American citizens.[6]

> "It is further well-established common law that an agent is dutybound to give the principal his or her undivided allegiance and to exercise toward the principal the utmost good faith and loyalty. (*Beeler v. West American Finance Co*. (1962) 201 Cal.App.2d 702, 705.)"

> *Gomez v. Smith*  (September 22, 2020) (Certified for Publication) Court of Appeal, Third Appellate District, Case C089338 at slip opinion p. 21.)

The UNITED STATES does not have "undivided allegiance" to Iran nor any of the above referenced obligations of an agent.    The UNITED STATES is not acting as Iran's agent as the UNITED STATES disturbingly urges.   The property is in custody of OFM in a broadly similar way that the Unabomber is in custody of the Bureau of Prisons. As Sandelands clearly testified, and as anyone with knowledge of the applicable law knows[7], the UNITED STATES acts pursuant to its Geneva Convention obligations to "preserve and protect"[8] diplomatic property of a foreign country even if the property is owned by an enemy state and even if a state of war exists. As the UNITED STATES itself has freely pointed out in another case involving one of the properties referenced in

---

[5] The cited article was written May 5, 2016.  The amount today is certainly higher.

[6] The other three are North Korea, Syria, and Sudan.

[7] Primarily, the Geneva Convention of 1963, Article 27 (United Nations, *Treaty Series,* vol. 596 p. 261) requires all signatories to "respect and protect" the consular premises of other signatory nations in the host's territory when relations are broken off even if the two states are at war.  The Vienna Convention on Diplomatic Relations (1961), United Nations Treaty Series, vol. 500, p. 95 ,also cited in the complaint, has the similar language at Article 45.  The "Foreign Missions Act" (22 USCA 4301-4316) implements the treaty (as relevant at 22 USCA 4305(c .)

[8] For no known reason, the statute implementing the United States' Geneva Convention obligation says "   "protect and preserve" (22 USCA 4305(c )) but, at least for present purposes, apparently means the same thing as "respect and protect."

the Complaint as being subject to the same laws and attributes ( at Compl., (Doc 1, p. 3: 18-23 par. 17)

> "**The United States has never acted as agent for Iran with respect to the real properties…Indeed, Iran objected to the leases of the real properties…"**

Memorandum of Points and Authorities in Support of Motion to Quash Plaintiffs' Writs of Attachment Delivered to Bank of America, Joseph j. *Cicippio et al., v. The Islamic Republic of Iran,* Civil Case No. 96-1805 (TPJ) USDC for the District of Columbia, )  (See Request for Judicial Notice, Exhibit "A.")

The real properties at issue in Cicippio were identical in all respects to the premises in this action, as relevant to this action.  (See Complaint, Doc 1, at p. 3:18-23, par. 17.)  When Sandelands writes on the Rent Board Notice of Intent that the  "United States Department of State, Office of Foreign Missions, as Custodian **for the Government of Iran"**  he knows that is false.  [9] The UNITED STATES cites (see Pl. memo. at p. 20:5-7) the justification in the evidence for this statement Sandelands' testimony at Iyengar, Decl. Ex. D ("Sandelands Tr. 46:7-8) This is clearly inadmissible "evidence"  that Sandelands testifies that someone, name, gender, race, address, place, time. job title, status, or source of this revelation is not disclosed, told him that was what to say![10] The UNITED STATES misleads the court and argues that Sandelands is testifying that this statement is true, when it cuts off the part that Sandelands is not saying he thought it was right but that was what "I was told to  indicate" by the unknown person described above.[11] The admissible evidence shows that Sandelands believes exactly what defendants argue and exactly what the UNITED STATES alleged in its complaint: the "property has been in the custody" of the UNITED STATES (Complaint. Doc. 1, page 2:28-3:2 (par. 10.)  Sandelands was asked at his deposition if the UNITED STATES preserves the property "on behalf of the government of Iran?  To which he

---

[9] In discovery responses, the UNITED STATES is more honest and states it is "the custodian of the property" and never claims to be the agent of Iran. (See Iyengar, dec. Exh E  "Plaintiff's Responses…to Special interrogatories Doc 62-1, at p. 93:21-94:1.
[10] Over a year into this case and at cross motions for summary judgment where the UNITED STATES has already filed its motion and opposition to defendants' motion,  the UNITED STATES has submitted no admissible evidence supporting the statement in the Rent Board Notice of Intent.  There is none.
[11] The statement appears elsewhere in the record, but not in admissible evidence.

answered "No, it acts "on behalf of our treaty obligation." (See Iyengar, decl. Exh D, Sandalands'

testimony at p. 78:5-6; Tr 10:5-6.) Iran is one of only four countries specifically designated by law

as a terrorist state. If Nazi Germany was around and had signed the Geneva Convention of 1963 as

distasteful as it would be, by treaty the US would have to protect Nazi Germany's consulates- but

definitely not as its agent.

## IV.   THE UNITED STATES' CLAIM THAT ONLY THE RENT ORDINANCE IN EFFECT IN 1987 IS APPLICABLE IS FRIVOLOUS

The UNITED STATES does not seem to appreciate that it filed a complaint in this case.  Of

course, nor does it seem to realize defendants filed an answer to the Complaint.  For example, the

complaint alleges in paragraph 20-23 (Doc. 1, p. 4:5-15; par. 20-23) that the withdrawal "is

governed by the Ellis Act" (par. 20) It further alleges the applicable law is "Chapter 37 of the San

Francisco Administrative Code, Section 37.A ." (*id* at par. 21.) The answer admitted paragraph 21.

"Defendants admit paragraph 21." See Answer to Complaint, at doc 16, p, 4 par.21)  Paragraph 22

of the Complaint alleges that the UNITED STATES "has complied with all applicable federal, state

and local law, including" the Ellis Act and the San Francisco rent ordinance." Complaint at Doc 1,

p. 4:12-15, par. 22.)  There is no reasonable way to read those judicial admissions as meaning

anything other than the law in effect in 2018.  Although the UNITED STATES **no longer contends**

that it complied with the current San Francisco rent ordinance, the only reasonable reading of the

complaint is that it is based on a claim that it did.  Having abandoned its complaint, summary

judgment must be awarded against it.

The UNITED STATES  certainly does not appreciate that a summary judgment motion is

directed to the pleadings. The complaint, without doubt, constitutes a judicial admission that the

current version of the SFRO is the applicable law.  "Under Ninth Circuit law, a statement in a

complaint serves as a judicial admission. *See Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848 (9th

Cir.1995); *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988)"

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.* (D. Ariz. 1997) 995 F.Supp. 1060, 1065.

"Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *In re Fordson Engineering Corp.,* 25 B.R. 506, 509 (Bankr.E.D.Mich.1982). Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. *See White v. Arco/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983); *Fordson,* 25 B.R. at 509.

*American Title Ins. Co. v. Lacelaw Corp.* (9th Cir. 1988) 861 F.2d 224, 226

The new position advanced by the UNITED STATES is a factual assertion that the parties intended to freeze defendants' rights to protection under the SFRO to the 1987 version. Although it submits no admissible evidence in support, and ignores important portions of the 1987 lease that contradict its position, it remains a factual claim that is barred by the allegations in the Complaint. In other words, the UNITED STATES now relies on a factual assertion that is barred by its judicial admissions. Moreover, all of the notices are attached to the complaint as well.  All of them, over and over, cite the current law as the applicable law.

We know the court will follow Ninth Circuit precedent as binding on it.  However, we would also note that even if the court did not find the admissions binding, as an evidentiary matter the notices served, the money paid and the actions taken (all 100% based on current law) compel the conclusion that there is no genuine issue of fact disputing the application of the current law.

Consistent with the complaint, when in discovery the UNITED STATES was asked to state "all facts upon which YOU base any contention that YOU have just cause to evict DEFENDANTS" its answer is 100% consistent with the judicial admissions- that the current law applies and the response is completely inconsistent with the new position. (See Dec. Iyengar, Doc 62-1, Exh. E, UNITED STATES' Responses to Special Interrogatories, at p. 96:7-17.)

The "Notice of Termination" (Doc 1, Complaint, at pars. 21-24 p. 4:9-27 and attached as Exhibit D to the Complaint, at p. 16-20) in the first paragraph, states the tenancy is terminated in 120 days. In 1987, the law provided the tenancy was terminated "60 days from the delivery in person" of the Notice of Intent to the SFRO"- See 37.9A((g)(3) b . (Sandelands Declaration, Exh. G

1   [12]Sandelands' (section 37.9A(g)(3.) The second paragraph states that the Notice of Termination "is

2   intended as a 120 day legal notice for the purpose of terminating your tenancy in accordance with

3   Chapter 37 of the San Francisco Administrative Code, Section 37.9A, California Government Code

4   section 7060 et seq., (Ellis Act): and California Civil Code Sections 1946 and 1946.1 as applicable."

5   Id.  Skipping one paragraph it the advises that "under Section 37.9(A)(f)(4)" if defendants are over

6   62 years old that they have "an **ENTITLEMENT"**  (Capitalization and bolding in original) to

7   demand that "the date of withdrawal of the premises shall be extended to one year after the date of

8   delivery to the Rent Board of a required Notice of Intent to evict under the Ellis Act. The 1987

9   version of the SFRO (Sandelands' Decl. Exh. G ). does not have a section 37.9A(f)(4).  There is no

10  **ENTITLEMENT**  (or even mention of) an extension of the tenancy from 120 days (or from 60

11  days)  to one year in the 1987 law. The 1987 law has no extension allowance at all.   In other words,

12  the notice informs defendants that the law grants them a 120 days' notice (not 60) and an extension

13  of that deadline to one year. Neither existed in 1987.

14         The UNITED STATES served each defendant a check for $5526.99, the exact amount due

15  under current law, with, as required under current law, a promise to pay the other half when they

16  vacated. It informed them the payments were made under "Section 37.9A(e)" a section that in 1987

17  had nothing to do with payments due, but dealt with re-rental in violation of the Ellis Act.. Further,

18  the payments due in 1986  (for tenants over 62) were $3,000. (See Sandelands, exh G,

19  sec37.9A(f)(1).)

20          The Recorded Memorandum of Notice in the 1987 law is different from the required notice

21  in the 2018 law, but the UNITED STATES used, verbatim, the notice required under current law,

22  with no reference to the required notice under 1987 law.  Under the 1987 form, (disingenuously

23  quoted in the UNITED STATES' memorandum at p.12:6-14  without noting that Sandelands did

24  not use that version, but the 2018 version) an agent could sign the Recorded Memorandum of

25  Notice for the owner (if he swore that was what he was doing,)  In other words, to believe the

26  UNITED STATES one would have to believe that Sandelands lied in the sworn Recorded

27

28

[12] It is not possible to tell the page numbers of Exh. G as they are blurred and overwritten. It appears to be at p. 52.

Memorandum of Notice, when the law he was using could have at least allowed him to claim  to be an agent of the owner. Of course, he was not an agent of the owner at any time, nor was OFM, but no one would use the 2018 form declaration if the 1987 version was applicable and one could use that.

Next, Sandelands used the current version of the Rent Board Notice of Intent which specifically forbids it being executed by "[a]attorney and/or not attorney representatives" when, the UNITED STATES now claims he could have avoided that form (or crossed out that language) using the 1987 version.  He specifically represents (as set forth before) that he making an **"OWNER'S DECLARATION"**  all bolding and capitalization in original.)

The Notice Regarding Termination of Tenancy, (Compl. Exh. F at 26-30)  is nearly identical to the Notice of Termination. It italicizes that defendants have **"AN ENTITLEMENT"**  (all bolding and capitalization in orig.)  to an extension of the tenancy up to one year (again not existent in 1987.) Page after page refers to rights and rules under current law.

The other notices are all similar and it is not disputed purport to comply with the current SFRO and make no mention or allusion to the 1987 version.

The Three day Notice to Quit, as we stated in the opening memorandum before we knew of the phony claim that current law did not apply, appears to be a useless document except that someone at the US attorney's office realized they had failed to serve the form required by San Francisco Rent Ordinance (See at p. 40-41)  and served that notice with the 3 day notice.  That notice did not exist at the time of the 1987 law or until 2016. The three-day notice says the earlier notices were "served…in accordance with Section 37.9A."  (Compl. p.36.)

Quite frankly, Sandelands (and his counsel) is lying to the court when he swears that the UNITED STATES followed the current law "in an abundance of caution"  (See Sandeland's decl. doc 62-2, at p. 2:16-22) and, without any doubt, the UNITED STATES followed the current law because that is the law it understood to be in effect.

Even if the court were to consider an unplead theory that is inconsistent with the complaint even though no motion to amend has been made, the complaint and these notices establish as a matter of law that the UNITED STATES always believed and acted as if current law applied.

1   Summary judgment in its favor based on the 1987 law would be inconceivable. Summary judgment

2   in favor of defendants is  required.

3            The defendants, even before or without regard to the addendums were already covered by

4   the SFRO by occupancy since 1984.  **The Addendum provision that the tenants would be**

5   **protected by the SFRO added nothing to the rights the tenants already had without the**

6   **addendum**  It would be illegal under the SFRO for the Addendum to reduce the tenants' rights. The

7   SFRO has no exemptions for rentals by government entities that are applicable to this case..

8            There is no question the parties expected and agreed the tenancy would be governed by local

9   and state laws. Even without that explicit agreement, state and local law would apply.  See *United*

10  *States v. Epstein,*  27 F. Supp.2d 404, 412 (involving landlord tenant disputes in the former Iranian

11  consulate in New York stating state law applies to government leases, because there is no federal

12  common law on questions of real property law.) See also *Guity v. Martinez*  2004 WL 1145832*6

13  stating courts "have long held"  that absent controlling federal statutes or rule of law "questions

14  involving real property rights are determined under state law, even when the United States is a

15  party. Under 22 USC 4307, all actions taken by the UNITED STATES in this case are subject to its

16  full compliance with local law.[13]  The license at the time the notice was served also said all laws

17  apply to OFM. (Sandeland, Exh. I, p.  doc 62-2, p. 75, at sect. 3(b).)

18           The eviction is also invalid under the 1987 law for many of the reasons already stated and

19  because, even in 1987  the law had a mandatory requirement that the tenant be advised that "Advice

20  Concerning this Notice to Vacate is Available from the San Francisco Rent Board (SFRO 37.9( c)

21  in the 1987 law at the time the notice of termination was served. The first time the UNITED

22  STATES gave that required warning was 366 days after the Notice of Termination.

23  **V.     THE LANGUAGE IN THE ADDENDUM IN NOT SUSCEPTIBLE TO THE**

    **INTERPRETATION OF THE UNTIED STATES WHEN ONE CONSIDERS ONLY**

24  **ADMISSIBLE EVIDENCE**

25           The UNITED STATES cites a snippet of testimony in support of its claim that the 1987 lease

26

27  _____

28  [13] As relevant, it states, " Nothing in section 4302, 4303, 4304, or 4305 of this title may be construed to preempt any
    State or municipal law or governmental authority regarding zoning, land use, health, safety, or welfare,…"

allows it to evict defendants based on the SFRO in 1987 even if it is later amended to be more favorable to defendants.  In context it is clear that his testimony is that the UNITED STATES would be limited to the just cause eviction provisions existing at the time the lease was signed; not that the tenants would be limited to defenses in the 1987 law if it was amended to give other or additional defenses. The UNITED STATES cites BRUCE OWEN for the opposite of the real meaning of the testimony.  (See Dec. Iyengar, Exh B attaching Bruce Owen testimony, Doc 62-1, at p..27:16-31:2 (Tr 51:22-56:2.) Alexandra Owen's testimony in no way supports the UNITED STATES' desperate attempts to argue the lease allowed it to evict defendants based on 1987 provisions in 2018.  Her testimony is similarly clear that the agreement was that the UNITED STATES' rights would be limited to an eviction for the then existing just cause provisions; not that the defendants would be limited to the provisions of the 1987 law in defending an eviction.  (Both OWEN'S are wrong in that they state they understood the Ellis Act had not passed and the SFRO not modified to add section 37.9A at the time of the second lease. This was true at the time of the 1984 lease. But those errors have no bearing on what the lease provisions meant; if anything, if they were right, the Ellis Act provisions would not justify an eviction.   See also the Declaration of Bruce Owen submitted concurrently with this memorandum at p. 2, par. 6- p.3- p.5, par. 14.

The UNITED STATES tells us twice that the intention of the parties " " is to be ascertained by the writing alone.' " (Pl. Memo. at 23:13-14, see also p. 7:19 )  Plaintiffs wholly agree with the UNITED STATES on that point with the exception that the testimony of plaintiffs,  introduced by the UNITED STATES in its Pls. Memo. at Doc. 62, p. 22:28-23:11 and the actual testimony is at Savith Iyengar decl. Doc. 62-1, Exh.. "C" incorp. Alexandra Owen depo, Doc. 62-1, at p. 68:5- 69:6 (A Owen Tr at p. 146:5—25)  and ( Savith Iyengar, decl. Doc 62-1, incorporating Bruce Owen deposition,  Doc 62-1, at p. 37:8-38:9 (B. Owen Tr. 146:12-25)  discusses actual communications between OFM and OWEN. The UNITED STATES has introduced them into evidence and OWEN has no objection whatever to that   These communications between the parties are without question admissible to interpret the intent of the language of the lease. *Pacific gas &Electric Co. v. Thomas Drayage* (69 Cal. 2d 33, 39-40 (1968);  Further, Bruce Owen's declaration is also admissible to the

extent it explains the circumstances surrounding the 1987 lease and even more the communicated

understandings of the parties as to what the lease intended.

The court in *Pacific Gas & Electric Co. v. G .W. Thomas Drayage & Rigging  Co.* explained:

> Such evidence includes testimony as to the circumstances surrounding the making of the agreement including the object, nature and subject matter of the writing so that the court can place itself in the same situation in which the parties found themselves at the time of contracting. If the court decides after considering this evidence, that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible.
>
> *Lexington Ins. Co. v. Commonwealth Ins. Co.* (N.D. Cal., Sept. 17, 1999, No. C98-3477CRB(JCS)) 1999 WL 33292943, at *4.

See also *Trident Center v. Connecticut General Life Ins. Co.* 847 F.2d 564, 568-569

(9th Cir. 1988) questioning the wisdom of *Pacific Gas*  but explaining every time a court is  asked to

interpret a contract subject to California law it must consider extrinsic evidence  and negotiations

between the parties

Reading the lease alone, in many respects it is a very standard form of a residential lease

especially in 1987.  The only part that is relevant to this case or motion is the addendum.

The addendum states:

"2. Tenant has the option to renew this lease for an additional ten (10) years [at an agreed rental

rate) "not to exceed what the San Francisco Rent Ordinance specifies."

"3.  The State Department agrees to abide by the rent control ordinance now in effect in San

Francisco."

The rest of the addendum states that the UNITED STATES could cancel the lease if diplomatic

relations were resumed;

It offers a right of first refusal to OWEN in the event of a sale of the property that is agreed to

and OWEN has a credit against any " " Tenant Improvements Added Value." "  None of this

supports the UNITED STATES' claim as to the meaning of the lease.

A contract is to be read as a whole and the fact that the Addendum explicitly limits rent

increases to that allowed by the SFRO for at least 20 years based on the then existent San Francisco

1   Rent Ordinance (the two periods alone last 20 years) certainly helps show there was no intent to

2   limit the SFRO provisions to 1987 law. While the parties could not have known the rate of inflation

3   at that point (1987) the increases over 10 years are extremely low   To the extent ambiguous, it

4   should be construed against the drafter-see *Sandquist v. Lebo Automotive, Inc.*  (2016) 1 Cal.5th 233,

5   247-  the UNITED STATES.

6   **VI.**    **THERE IS AMPLE EVIDENCE OF RETALIATION AND BAD FAITH MOTIVE**

7       For summary judgment purposes, there is ample evidence the eviction is retaliatory.  To start

8    with Bruce Owen sent a Notice of Violation to OFM on May 23, 2018 and the decision to evict was

9   made eight days later on May 31, 2018. What a coincidence!  A reasonable jury could, indeed

10   would, find that Sandlands lies and says the final decision was not made until after his inspection

11   of the premises on June 19, 2018.  (Even if it was, it is still in retaliation for complaints re

12   habitability.)  The two checks were issued by the State Department 7 days earlier. (Sandeland decl,.

13   doc 62-2, at p. 10.)  A very detailed lengthy eviction notice, was in his bag ready to give to OWEN

14   as he met them on June 19, 2018. (All agree that the first notice from the OFM  was after an hour

15   long inspection when Sandelands served the notice. He says it was because the house needed

16   repairs.  A jury could find, and any reasonable jury would find that the UNITED STATES lies in

17   the complaint where the UNITED STATES claims to believe the property needs $5 million in

18   repair. There is no admissible evidence this is true. If the jury did so find, they could easily

19   conclude the real motive is retaliation.

20       The UNITED STATES exaggerates the  *Drouet v. Superior Court* (2004)31 Cal.4th 583

21   holding which harmonized Civil Code sec. 1942.5 with the Ellis Act and found that there is no

22   violation of 1942.5 so long as the landlord proves that he for sure will go out of business.   There is

23   no language in *Drouet* (itself a 4-3 decision) that extends its holding beyond an interpretation of

24   these two statutes.  The *Drouet* Court, of course, knew that California has a different and additional

25   source of defense based on retaliation and that is " parallel and independent" of CC 1942.5. *Bareal*

26   *v. Superior Court*  (1981) 30 Cal.3d 244, 251.  There is nothing in *Drouet*  that addresses the

27   common law right to be free of retaliation. Many laws against discrimination are expressly excluded

28   from the right to go out of business under the Ellis Act. See Government Code 7060.1(d.)

1    In ruling on whether the common law defense of retaliation applies if proven to defeat and

2    Ellis Act eviction, the court considers what the California Supreme Court would rule on the same

3    issue. While the California Supreme Court respects stare decisis as much as the United States

4    Supreme Court (both, however being the highest level of authority in their respective zones and not

5    bound by stare decisis for that reason) *Drouet* is a 16 year old decision that is clearly limited to CC

6    1942.5(a.) The common law lives and breathes and expands and narrows  as circumstances warrant.

7    The present court would today almost certainly hold the common law defense will be allowed at

8    least when the interest to be  protected (here a family's house of 36 years)- to not be thrown out

9    because of complaints or giving notice about conditions of the premises- for a retaliatory reason, far

10   exceeds     Further, the parties agreed to be bound by the SFRO and it has forbidden retaliation since

11   its inception.  See SFRO 37.9(d.) Further, under the 5th amendment to the US constitution, the

12   government cannot take away a property right for retaliatory motives.

13   **VII.   SOVEREIGN IMMUNITY HAS NO APPLICATION**

14       The UNITED STATES specifically agreed to be bound by the SFRO. By federal law, it is

15   subject to all applicable state and local laws. (22 USC 4307.) In agreeing to the lease and even

16   without it, it waived any right to argue that it was not bound by the SFRO. As discussed above, its

17   own pleadings and notices refute any claim that the waiver did not extend to the San Francisco Rent

18   Ordinance as applicable to the tenancy throughout the tenancy.  Not a single one of the cases the

19   UNITED STATES cite involve the UNITED STATES as plaintiff. Sovereign immunity can bar

20   actions against the UNITED STATES.  It has no application to a contract defense, based of course

21   on the contract where the defendant is not suing the UNITED STATES for money.  See also

22   *Epstein, supra.*

23   **VIII.  THE COURT SHOULD AWARD SANCTIONS UNDER 28 USC 1927 AND/OR
         FRCP RULE 56(h)**
24

25       Defendants do not lightly seek sanctions as all litigants should have the ability to present any

26   reasonable and good faith argument. But Sandelands' declaration is unquestionably false where he

27   says the UNITED STATES followed current law out of "an abundance of caution." It definitely did

28   not do that. No one would record the Recorded Memorandum he did if he thought he could file the

version allowed by the 1987 law. (Although both would be clearly defective, the 1987 version is not as totally bad as the declaration he filed.) The complaint, the discovery responses, the notices, the payments all show the UNITED STATES followed current law because that was the law it knew it had to follow.  Further, under 28 USC 1927 any attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the *excess* costs, expenses, and attorneys' fees reasonably incurred because of such conduct." [28 USC § 1927 (emphasis added)] Here again, sanctions are only due for conduct that falls far below what should be expected. But the UNITED STATES has forced defendants' motion  and their opposition to its motion based on one false argument after another and even worse based on underlying declarations that are intentionally false.  Further, not only Sandelands knows that his declaration submitted with the UNITED STATE'S motion is false; If the court agrees sanctions are warranted, defendants will file a motion seeking them.

## IX.    CONCLUSION

This action fails for the foregoing reasons.

September 24, 2020                              _____/s/ Daniel Berko_____

                                               DANIEL BERKO, Attorney for
                                               Defendants BRUCE and ALEXANDRA OWEN